**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 15, 2005**

**MICHIGAN DEPARTMENT OF**
**TRANSPORTATION,**

**Plaintiffs-Appellee,**

**v**                                                    **No. 124765**

**HAGGERTY CORRIDOR PARTNERS**
**LIMITED PARTNERSHIP, PAUL D.**
**YAGER, trustee, also known as**
**PAUL D. YEGER, and NEIL J. SOSIN,**

**Defendants-Appellants.**

_____

**BEFORE THE ENTIRE BENCH**

**YOUNG, J.**

Defendants own land that was partially taken in condemnation proceedings initiated by plaintiff. At issue is whether the trial court properly allowed defendants to present, in support of their proffered calculation of just compensation, evidence that their property had been rezoned from residential to commercial after the taking.

We conclude that the evidence of the posttaking rezoning was irrelevant to the issue of the condemned property's fair market value at the time of the taking. Because the trial court abused its discretion in admitting

this evidence, and because the error was not harmless, we affirm the judgment of the Court of Appeals, which reversed the jury's verdict and remanded the case for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Defendant Haggerty Corridor Partners Limited Partnership owned approximately 335 acres of an undeveloped tract of land in Novi, Michigan, which it had assembled for the future purpose of building a high-tech office park. Plaintiff, the Michigan Department of Transportation (MDOT), sought to condemn approximately fifty-one acres of this property for construction of a portion of the M-5 Haggerty Road Connector in the city of Novi. As required under MCL 213.55,[1] MDOT provided defendants with a good-faith offer of $2,758,000 for the property, based on its then-applicable single-family and agricultural zoning classification.[2] Defendants, believing

---

[1] MCL 213.55(1) requires a condemning agency, before initiating negotiations for the purchase of property, to make a "good faith written offer" based on the agency's appraisal of just compensation for the property.

[2] At the time, the property was zoned by the city of Novi for single-family homes and agricultural uses (R-A Residential/Acreage). In May 1998, approximately two and
Footnotes continued on following page.

that the property's "highest and best use"[3] was commercial rather than residential, refused MDOT's offer.

In December 1995, MDOT initiated an eminent domain proceeding under the Michigan Uniform Condemnation Procedures Act (UCPA)[4] to condemn the property. At trial, as might be expected, the parties presented widely divergent evidence with respect to just compensation.

Consistent with its theory that the highest and best use of the property was residential, MDOT presented evidence that, at the time of the taking, the property was not likely to be rezoned to permit the commercial use proposed by defendants.[5] MDOT's appraiser testified that

---

one-half years after the taking occurred, Novi rezoned the property for office/service/technology uses (OST).

[3] "'Highest and best use' is a concept fundamental to the determination of true cash value. It recognizes that the use to which a prospective buyer would put the property will influence the price that the buyer would be willing to pay." *Edward Rose Bldg Co v Independence Twp*, 436 Mich 620, 633; 462 NW2d 325 (1990). Thus, a condemnee is generally entitled to compensation based on the "highest and best use" of his property. *St Clair Shores v Conley*, 350 Mich 458, 462; 86 NW2d 271 (1957).

[4] MCL 213.51 *et seq.*

[5] For example, MDOT presented the testimony of Novi's chief planning consultant that, in 1993, the planning commission recommended that the parcel not be rezoned commercial. The consultant further testified that, as of the date of the taking, there was no plan to rezone the

Footnotes continued on following page.

it was economically feasible to develop the parcel, both before and after the taking, as a residential subdivision, and that, in 1995, it was not reasonably possible that the land would be rezoned for commercial use. On the basis of an estimation that defendants' land would support development of fifty-four residential lots, MDOT's appraiser testified that the difference in the value of defendants' property before and after the taking amounted to $1,415,000.

Defendants, on the other hand, sought to establish that they, along with other knowledgeable participants in the commercial real estate market, knew at the time of the December 1995 taking that the property was likely to be rezoned to allow for its planned use as an office park.[6] Defendants' appraiser testified that the land could not have been profitably developed as residential property, and that rezoning was imminent at the time of the taking.

property because of the demand for large-lot, million-dollar homes.

[6] For example, defendants presented evidence that city officials had made representations concerning their interest in rezoning the area to accommodate business interests and that, at the time of the taking, Novi's economic development coordinator was already involved in the planning for an OST zoning classification to accommodate defendants' planned use of their property. At the time of the taking, however, defendants had not petitioned the city to have the land rezoned.

Against this backdrop, defendants' appraiser arrived at a just compensation figure of $18.6 million.

Consistent with their theory that the fair market value of the residential property on the date of the taking was increased because of the realistic prospect that it would soon be rezoned commercial, defendants sought to introduce evidence of the fact that the property had, in fact, been later rezoned. Defendants wished to show that in May 1998, approximately two and one-half years after the taking occurred, defendants' property was rezoned for office/service/technology (OST) uses. MDOT filed a motion in limine to bar this evidence, arguing that it was irrelevant to the fair market value of the property as of the date of the taking. The trial court denied MDOT's motion. Additionally, the trial court refused to grant MDOT's alternative request to present evidence that the rezoning took place solely as a result of the taking.[7]

---

[7] Evidence of value related solely to the taking itself, including evidence of a rezoning that occurs because of the taking, is not admissible for just compensation purposes. See MCL 213.70(1); *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367, 378 n 13; 663 NW2d 436 (2003), citing *In re Urban Renewal, Elmwood Park Project*, 376 Mich 311, 318; 136 NW2d 896 (1965) ("The Footnotes continued on following page.

At MDOT's request, the jury was taken on a bus tour of defendants' property. The parties vigorously dispute what the jurors saw on this tour. MDOT contends that the jurors saw mainly an undeveloped tract with some commercial buildings under construction on a portion of the property. Defendants contend, on the other hand, that the jurors saw many completed office buildings on the developed portion of the property and that only a small portion of the property remained undeveloped. There is no record to support either party's contention.

The jury was instructed that fair market value must be assessed as of the date of the condemnation, and not as of some future date. The jury was further instructed, with respect to the zoning reclassification, that

> if there was a reasonable possibility, absent the threat of this condemnation case, that the zoning classification would have been changed, you should consider this possibility in arriving at the value of the property on the date of the taking.

The jury determined that just compensation was owed to defendants in the amount of $14,877,000.

On appeal to the Court of Appeals, MDOT contended that the trial court erred in denying its motion to

---

effect on market value of the condemnation proceeding itself may not be considered as an element of value.").

6

exclude evidence of the posttaking rezoning decision and in further prohibiting MDOT from introducing evidence establishing that the zoning change was caused by the condemnation itself. The Court of Appeals majority agreed that the trial court abused its discretion in allowing the jury to consider evidence of the posttaking zoning change and that the error was not harmless:

> The subject property was to be valued "as though the acquisition had not been contemplated." MCL 213.70(1). Plaintiff attempted to introduce evidence establishing that the subject property was rezoned because of the condemnation. If so, the actual rezoning was irrelevant. Indeed, the value of condemned property should have been determined without regard to any enhancement or reduction of the value attributable to condemnation or the threat of condemnation. *State Highway Comm v L & L Concession*, 31 Mich App 222, 226-227; 187 NW2d 465 (1971). Defendants were not entitled to the enhanced value that resulted from the condemnation project, only the value of the property at the time of taking. *In re Urban Renewal, Elmwood Park Project*, 376 Mich 311, 318; 136 NW2d 896 (1965). Although the potential for rezoning on the date of taking was properly considered, evidence of the actual zoning change was irrelevant to the value of the property on the date of taking and should not have been disclosed to the jury. Moreover, we agree with plaintiff's contention that the evidence improperly contributed to the jury's finding that the rezoning was reasonably possible. At the very least, the improperly admitted evidence tainted the jury's resolution of the "reasonable possibility" question of fact. Therefore, we conclude that the trial court abused its discretion in admitting the evidence.

7

We reject defendants' contention that the evidentiary error was harmless. Had the evidence not been admitted, it is unlikely that the jury would have been exposed to the evidence that defendants now claim renders the improperly admitted evidence harmless.[8] Consequently, we deem it appropriate to reverse and remand for further proceedings.[9] [Unpublished opinion per curiam of the Court of Appeals, issued July 22, 2003 (Docket Nos. 234099, 240227), slip op, p 3.]

The dissenting judge opined that the evidence was properly admitted:

As the trial court concluded, evidence of the actual rezoning had the tendency to make the existence of the possibility of rezoning more probable than it would be without the evidence. MRE 401. More importantly, however, is the fact that there is no Michigan case on point regarding the admissibility of the subsequent fact of rezoning, and our Sister States' case law provide [sic] divergent views. However, one respected source (also cited by the trial court) indicates that "[t]he fact that, subsequent to the taking, the zoning ordinance was actually amended to permit the previously proscribed use has been held to be weighty evidence of the existence (at the time of the taking) of the fact that there was a reasonable probability of an imminent change." 4 Nichols, Eminent Domain (3d ed), § 12C.03[3]. Accordingly, it cannot be said that

---

[8] Defendants contended that the posttaking rezoning evidence was merely cumulative of the jurors' bus tour of the property, because, in light of the extensive commercial development present on the property at the time of the tour, it was evident that the property had already been rezoned to allow for commercial uses.

[9] In light of its conclusion, the majority did not address MDOT's contention that the trial court further abused its discretion in prohibiting it from introducing evidence that the rezoning was caused by the condemnation.

8

the decision to admit the evidence was an abuse of discretion when no prior case has so held, and there is respected authority that favors the ruling made by the trial court.

Moreover, even if the admission of the evidence was an abuse of discretion, it was harmless error in light of the jury instructions and other competent, admissible evidence that allowed the jury to properly conclude that rezoning was a reasonable possibility. Here, the jury was presented with sufficient evidence regarding whether there was a reasonable possibility that the subject property would be rezoned, independent of the evidence of the actual rezoning, a fact which the majority concedes. Further, the trial court properly instructed the jury on the principles of condemnation law set forth by the majority, and repeatedly stressed the principle that the jury must value the property as of the date of the condemnation, rather than at some future date . . . . [Murray, J., dissenting, slip op, pp 2-3 (citations omitted).]

The dissent further rejected MDOT's alternative argument that the trial court erred in refusing to allow it to introduce evidence establishing that the rezoning was directly attributable to the condemnation proceedings. Judge Murray noted that MCL 213.73, which allows enhancement in value of the remainder of a partially condemned parcel to be considered in determining just compensation, was inapplicable and did not serve to permit MDOT to introduce this evidence because MDOT did not plead in its complaint that defendants' property was enhanced

9

because of the improvement.[10]  Thus, Judge Murray opined, the majority's decision "effectively ignores the fact that defendants' evidence directly relates to the 'reasonable possibility' that rezoning of the property would be effectuated."  *Id*. at 4.

This Court granted defendants' application for leave to appeal, limited to the issues "(1) whether a posttaking zoning decision can be considered in determining value at the time of the taking, and (2) whether the Court of Appeals decision in this case is consistent with *Dep't of Transportation v [VanElslander],* 460 Mich 127 [594 NW2d 841] (1999)."[11]  We would hold that the evidence of a posttaking rezoning is irrelevant to a just compensation determination, that the error in the admission of such evidence in this case was not harmless, and that our conclusion is wholly consistent with *VanElslander*, *supra*,

---

[10]  The dissent's rationale here is difficult to follow, and we agree with Justice Markman's conclusion that MCL 213.73 does not apply.  See *post* at 29.  As the dissenting judge himself notes, MDOT made no "*enhancement*" claim under MCL  213.73.  Rather, it simply sought to rebut defendants' posttaking rezoning evidence with its own evidence that the rezoning was caused by the condemnation and, thus, could not properly be considered in determining just compensation.  See MCL 213.70(1), (2).

[11]  470 Mich 874 (2004).

10

and we affirm the judgment of the Court of Appeals majority.

## II. STANDARD OF REVIEW

Evidentiary rulings are reviewed for an abuse of discretion.[12] However, preliminary issues of law underlying an evidentiary ruling are reviewed de novo. See *People v Lukity*[13] ("[T]he admission of evidence frequently involve[s] preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence. This Court reviews questions of law de novo."). A trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law.[14]

## III. ANALYSIS

### A. INTRODUCTION

Const 1963, art 10, § 2 provides that "[p]rivate property shall not be taken for public use without just compensation therefor being first made or secured in a

---

[12] *VanElslander, supra* at 129.

[13] 460 Mich 484, 488; 596 NW2d 607 (1999).

[14] *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003).

11

manner prescribed by law." The term "just compensation" as used in our Constitution, as well as in the UCPA, is a term of art that "imports with it all the understandings those sophisticated in the law give it."[15] The concept of just compensation "'includes all elements of value that inhere in the property,'"[16] and must be determined on the basis of all factors relevant to its cash or market value.[17]

As we have recently had occasion to reaffirm, fair market value is to be determined as of the date of the taking. See *Silver Creek, supra* ("'[A]ny evidence that would tend to affect the market value of the property as of the date of the condemnation'" is relevant in determining just compensation.).[18]

In keeping with these venerated principles concerning the calculation of just compensation, the UCPA specifically provides that fair market value "shall be

---

[15] *Silver Creek, supra* at 379.

[16] *Id*. at 378, quoting *United States v Twin City Power Co*, 350 US 222, 235; 76 S Ct 259; 100 L Ed 240 (1956) (Burton, J., dissenting).

[17] *Silver Creek, supra* at 377, quoting *Searl v Lake Co School Dist No 2*, 133 US 553, 564; 10 S Ct 374; 33 L Ed 740 (1890).

[18] *Silver Creek, supra* at 379, n 14, quoting *VanElslander, supra* at 130.

12

determined with respect to the condition of the property and *the state of the market on the date of valuation.*"[19] The UCPA prohibits, however, the consideration of any changes in market conditions that are substantially due to the general knowledge of the imminent condemnation of the property.[20] Instead, with the exception of enhancement in value of the remainder of a partially taken parcel,[21] "the

---

[19] See former MCL 213.70 (1980 PA 87), now MCL 213.70(3), amended by 1996 PA 474, effective December 26, 1996 (emphasis supplied). The 1996 amendment of MCL 213.70, which took effect after the condemnation complaint was filed in this case, does not contain any substantive changes that would affect our analysis in this case.

[20] See former MCL 213.70 (1980 PA 87), now MCL 213.70(1), (3), amended by 1996 PA 474, effective December 26, 1996.

[21] See MCL 213.73, which provides, in part:

> (1) Enhancement in value of the remainder of a parcel, by laying out, altering, widening, or other types of improvements; by changing the scope or location of the improvement; or by either action in combination with discontinuing an improvement, shall be considered in determining compensation for the taking.

> (2) When enhancement in value is to be considered in determining compensation, the agency shall set forth in the complaint the fact that enhancement benefits are claimed and describe the construction proposed to be made which will create the enhancement. . . .

* * *

Footnotes continued on following page.

property shall be valued in all cases as though the acquisition had not been contemplated."[22]

### B. POSSIBILITY OF REZONING AS A FACTOR AFFECTING JUST COMPENSATION

A condemned parcel's fair market value must be determined "'"based upon a consideration of all the relevant facts in a particular case."'"[23]  Accordingly,

---

(4) The agency has the burden of proof with respect to the existence of enhancement benefits.

As explained in note 10 of this opinion, this portion of the UCPA is inapplicable to this dispute.  MDOT raised no argument that the award of just compensation had to reflect any enhancement to the remainder of defendants' property by virtue of the condemnation.

It must be noted that the principles set forth in MCL 213.70 and 213.73, as well as the principles we today set forth, are wholly *reciprocal*.  Just as MCL 213.73 allows the condemning agency to offset the fair market value of partially taken property by the increased value to the remainder, MCL 213.70(3) allows the property owner to seek increased just compensation on the basis of the *devaluation* of his remaining property due to the taking. Similarly, just as our holding today precludes a property owner from seeking increased just compensation on the basis of an *ex ante* event, it also precludes the condemning agency from paying a reduced amount on the basis of such an event.  See note 34 of this opinion.

[22] See former MCL 213.70 (1980 PA 87), now MCL 213.70(1), amended by 1996 PA 474, effective December 26, 1996.

[23] *Silver Creek, supra* at 378, quoting *In re Widening of Gratiot Ave*, 294 Mich 569, 574; 293 NW 755 (1940), quoting *In re Widening of Michigan Ave,* 280 Mich 539, 548; 237 NW 798 (1937); see also *State Hwy Comm'r v Eilender*, 362 Mich 697, 699; 108 NW2d 755 (1961).

14

evidence demonstrating the likelihood of a zoning modification, just like any number of circumstance that may affect a property's value on the open market, may be relevant in determining just compensation. However, because just compensation must be calculated on the basis of the market value of a property on the date of the taking, the relevance of any such evidence is wholly dependent on whether, and how, the particular factor at issue would have affected market participants *on that date.*

Our case law is quite clear in this regard. As we noted in *State Hwy Comm'r v Eilender*:[24]

> We look at the value of the condemned land at the time of the taking, not as of some future date. If the land is then zoned so as to exclude more lucrative uses, such use is ordinarily immaterial in arriving at just compensation. But, on the other hand, it has been held, "if there is a reasonable possibility that the zoning classification will be changed, this possibility should be considered in arriving at the proper value. *This element, too, must be considered in terms of the extent to which the 'possibility' would have affected the price which a willing buyer would have offered for the property just prior to the taking.*" [Emphasis supplied.]

---

[24] 362 Mich 697, 699; 108 NW2d 755 (1961), quoting *United States v Meadow Brook Club,* 259 F2d 41, 45 (CA 2, 1958).

15

Thus, we concluded in *Eilender* that a nonfrivolous, nonspeculative "reasonable possibility" of a zoning change, as evidenced by an already pending zoning modification, could properly be considered in determining just compensation.[25]

Similarly, we held in *VanElslander, supra*, that the trial court abused its discretion in refusing to allow plaintiff MDOT to present into evidence an appraisal of the condemnees' property that was based on the possibility that a zoning variance could be obtained to cure the violations created by the condemnation. Noting that "'any evidence that would tend to affect the market value of the property as of the date of condemnation is relevant,'"[26] we held that the possibility of obtaining a variance, just like the possibility of a zoning modification, may be relevant to the just-compensation determination. We stressed, however, that such evidence was only relevant to the extent that it aided the fact-finder in determining

---

[25] *Eilender, supra* at 700.

[26] *VanElslander, supra* at 130, quoting the Court of Appeals dissent.

"'"the price which a willing buyer would have offered for the property *just prior to the taking . . . .*"'"[27]

Applying these longstanding principles as reaffirmed in *Eilender*, *VanElslander*, and *Silver Creek*, we would hold that the trial court here committed an error of law, and thus abused its discretion,[28] when it denied MDOT's motion to exclude evidence of the posttaking zoning modification.

We of course agree with the Court of Appeals dissent, and with our dissenting colleagues,[29] that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[30] Where we believe the dissenters have gone astray is in misidentifying the "*fact that is of consequence.*"

---

[27] *Id.* at 131, quoting *Eilender, supra* at 699 (emphasis supplied).

[28] See *Katt, supra* at 278.

[29] Our responses to the "dissent" refer to Justice Markman's opinion. Although Justice Weaver has also issued a dissent, this dissent does nothing more than reiterate, in abridged fashion, the opinion of Justice Markman.

[30] MRE 401.

17

The dissenters frame this consequential fact as the existence of a "reasonable possibility" that the property would be rezoned.  See *post* at 4.  The possibility of a zoning modification must, indeed, be a "reasonable" one in order, as a matter of logic, for it to have any bearing on fair market value.  However, this is only part of the equation.  The "reasonable possibility" of a zoning change bears on the calculation of fair market value *only* to the extent that it *could* have affected the price that a theoretical willing buyer would have offered for the property immediately prior to the taking.[31]  Thus, the "fact that is of consequence" is the reasonable possibility of a zoning modification, *as that possibility might have been perceived by a market participant on condemnation day.*[32]

---

[31] See *VanElslander, supra* at 130; *Eilender, supra* at 699; *In re Widening of Gratiot Ave, supra.*

[32] Justice Markman purports to agree that "'the "fact that is of consequence" is the reasonable possibility of a zoning modification, *as that possibility might have been perceived by a market participant on condemnation day.'"* *Post* at 8, n 8.  Yet his analysis completely ignores the italicized phrase, which is *critical* to the just-compensation inquiry.  A market participant in December 1995 would have had absolutely no way of knowing that the subject property would have been rezoned two and one-half years later.  Moreover, as we have pointed out, the *objective* probability that something will occur in the Footnotes continued on following page.

Footnotes continued on following page.

18

Any information that was available at the time of the taking may certainly be relevant in determining the price that a property might fetch on the day of the taking. For example, in this case, defendants were properly permitted to present evidence that they had met with city officials regarding their plans for the area, and that these officials had expressed a willingness to make the required zoning changes; that the Novi Chamber of Commerce and other members of the business community supported the proposed zoning change; that Novi's Economic Development Coordinator, Greg Capote, did not believe that the property was suitable for single-family development; that there was a dire need for zoning to accommodate high-tech office development; and that, at the time of the taking, Capote was already involved in the planning for an OST zoning classification to accommodate this type of development. All of this evidence pertains to information that might have affected the value of the property as of the date of condemnation, December 7, 1995. Indeed, at the time defendants acquired their Novi property, beginning in 1988, the property was more valuable in their

---

future is in no way dependent on what *actually* occurs after that probability is calculated.

eyes because of the looming possibility of a future zoning change.[33]

In contrast, a posttaking event or occurrence is utterly irrelevant to the calculation of just compensation. Market participants are, as a general rule, not omniscient, and would not be aware on the date of the taking that a posttaking event is absolutely certain to occur.[34] A posttaking occurrence cannot possibly affect the fair market value of property on the day of the condemnation, because the occurrence has not yet come to pass and, thus, cannot contribute to the mass of information affecting the market value of the property on

---

[33] Of course, as of the date of the taking, December 7, 1995, defendants had not even made a formal request for a zoning change.

[34] Consider the stock market. The price of a given share is often affected by available information. The value of a share may decrease, for example, as rumors spread that a company's chief operating officer might be indicted for a crime related to the operation of the business. Similarly, during the preindictment period, that share's value may rise or fall depending on investors' perceptions regarding the probability that an indictment is or is not imminent. The fact that the officer is, in fact, indicted, however, does not and *cannot* have any bearing on the market price of the share *on the day before the day the officer is indicted*. The fact of the actual indictment is, then, quite irrelevant in determining why the share was trading at a given price on the day before the indictment was filed. Rather, it was merely the *speculation* concerning the indictment that made the stock price fluctuate.

that day.  In short, a posttaking zoning change is irrelevant to the just compensation calculation because it does not make the *fact of consequence*——that information regarding the reasonable possibility of a zoning change may have impacted the market value of property on the date of the taking——more probable or less probable.[35]

The trial court's ruling and the Court of Appeals dissenting position on the admission of posttaking

---

[35] The error of defendants' position is evident when one considers that it makes fair market value wholly dependent on extraneous temporal considerations: when the condemnation trial occurs and when, if ever, a zoning change occurs.  For example, suppose that identical adjoining properties, separately owned, are zoned residential on the day that each is condemned.  Suppose that one trial occurs two months before the properties are rezoned commercial, while the other trial does not occur until after the rezoning.  The first property owner to go to trial will, of course, not be able to present to the jury evidence that the property was actually rezoned.  The second property owner, however, will be in a position to argue that the fact that the rezoning *actually* occurred increased the *probability*, on the day of the taking, that the rezoning was going to occur, and, in turn, that a higher fair market value must be assigned to that property.  This illustrates the incongruity of defendants' position: The two properties, on the day of the taking, had precisely the same probability of being later rezoned; yet the second owner, solely by virtue of the later trial date, will be permitted to present evidence to show that not only was there a "reasonable possibility" of rezoning, but future rezoning was an absolute *certainty*.  Aside from the obvious logical error of defendants' position, adopting such a rule would also lead to gamesmanship and strategic filing.  Indeed, this rule would give condemning agencies every incentive to postpone zoning plans in order to reduce the price of just compensation.

evidence are informed by a common logical fallacy. As our dissenting colleague, Justice Markman, argues: "That the property was, in fact, rezoned makes it 'more probable' that a 'reasonable possibility' of rezoning existed at the time of the taking. *Post* at 8. At its core, this argument supposes that the probability of a particular occurrence at a specific point in time is made stronger by after-the-fact events.[36] This fallacy presumes that a zoning event occurring *after* the date of condemnation has logical and legal relevance to the hypothetical "willing buyer's" calculation of the price of the property on the condemnation date.

In order to understand the flaw in the probability theory and rationale of the Court of Appeals dissent and the trial court, it is important to remember the context

---

[36] In the world of psychology, this phenomenon is known as "hindsight bias," whereby the subject, upon learning that something occurred, overestimates the ability to predict that that "something" would occur. See <http://en.wikipedia.org/wiki/Hindsight_bias> (noting that "[p]eople are, in effect, biased by the knowledge of what has actually happened when evaluating its likelihood").

Compare this flawed *ex ante* probability logic with the common logical fallacy known, in the realm of causation theory, as "*post hoc ergo propter hoc*" ("after this, therefore because of this"). In each case, the subject assigns inflated significance to an after-the-fact event.

of the just compensation valuation goal. Although condemnation results in a "forced sale," the price the condemning agency is required to pay must approximate that price which a willing buyer would have offered for the property at the time of the taking. Consequently, because information concerning events occurring *after* the condemnation could not possibly have influenced the conduct of a willing buyer on the date of the taking, it can never be logically, and thus legally, relevant in determining the price that the theoretical willing buyer and seller would have agreed upon on the date of the taking.

Consider the application of this theory of probability to an event-such as the toss of a die-the probability of which is known. That a six is rolled *after* one predicts this outcome does not increase the strength of the prediction beyond the usual one-in-six chance of being correct. However, contrary to conventional probability theory, the proffered dissenting probability theory suggests that the predictive force of a "six" call is made stronger by the mere fact that the thrown die actually revealed a six. It is hard to understand how such a "back to the future probability theory" works any

more logically when an event less predictable than the roll of a die is at issue.

While a posttaking change in zoning may suggest that one party may have had a more astute prognostication of local zoning practices, it cannot seriously be advanced that a zoning change made after the taking could in any way have influenced a "willing buyer's" pricing decision on the day of the taking. Only that which could legitimately influence a buyer at the time of the taking is legally and logically relevant to the amount of compensation that must be paid for a taking. Because events that occur after the taking fall outside this zone of potential influence, they cannot logically and therefore legitimately be considered in determining just compensation.

This case well illustrates the illogic of admitting evidence of postcondemnation events to influence the fact-finder's determination of just compensation under the statute. Here, the change in zoning occurred two and one-half years after the date of the taking. It is difficult to envision how a theoretical "willing buyer" of defendants' property would have factored into his purchase

offer in 1995 a zoning decision made by Novi[37] more than two years after that date.[38]

As noted by the Court of Appeals dissent and by our dissenting colleague, *post* at 17, 4 Nichols, Eminent Domain (3d ed), § 12C.03[3], indicates that "'[t]he fact that, subsequent to the taking, the zoning ordinance was actually amended to permit the previously proscribed use has been held to be weighty evidence of the existence (at the time of the taking) of the fact that there was a reasonable probability of an imminent change.'"[39] Although

---

[37] As an aside, it must be remembered that it was the *city of Novi*, and not the condemning authority (MDOT), that rezoned this property. We are not, in this case, concerned with any allegations of fraud or gamesmanship on the part of the condemning agency (for example, by delaying an inevitable rezoning decision in order to avoid paying a higher amount as just compensation for a taking).

[38] We stress again that it is not the *probability* of a zoning change that is irrelevant to the just-compensation determination. Indeed, we adhere to the rule, set forth in *Eilender* and *VanElsander*, that evidence of the reasonable possibility of a zoning change is admissible to the extent that it aids in determining the fair market value of the property at the time of the taking. Rather, it is merely the *fact* of the posttaking zoning change that is irrelevant, as it is of no import in determining "'the price which a willing buyer would have offered for the property just prior to the taking . . . .'" *VanElslander, supra* at 131, quoting *Eilender, supra* at 699.

[39] Similarly, it is noted in 9 ALR3d 291, § 11 that some courts have permitted the introduction of this type

Footnotes continued on following page.

it is true that some courts have, indeed, permitted the introduction of posttaking rezoning evidence, for the reasons we have expressed, we reject the reasoning employed by these courts.[40] We do not, for example, agree with the New Jersey Supreme Court that evidence of a posttaking zoning change may serve to "support the reasonableness of the factual claim that on the date of taking the parties to a voluntary sale would have recognized and been influenced by the probability of an

of evidence, while other courts have rejected the admission of such evidence.

[40] While there is a dearth of case law on point, Justice Markman has cited a small handful of foreign cases supporting his position. It is far from evident that the few cases cited in the Nichols text and in footnote 10 of Justice Markman's dissent, *post* at 10 n 10, represent a majority rule. In any event, we are hardly compelled to subscribe to the view of a few misguided courts. These cases give lip service to the notion that it is fair market value at the *time of the taking* that must guide the determination of just compensation; yet, without providing a satisfactory explanation for doing so, they sanction the admission of evidence that is wholly irrelevant to market status at that critical time. We choose, rather than blindly to follow the lead of these few jurisdictions, to adhere to the principles set forth in the UCPA and developed under our Constitution. Moreover, as the Nichols text itself recognizes, "[a]n important caveat to remember in applying [the rule that the probability of rezoning may be considered in determining just compensation] is that *the property must not be evaluated as though the rezoning were already an accomplished fact*. It must be evaluated under the restrictions of the existing zoning with consideration given to the impact upon market value of the likelihood of a change in zoning." Nichols, *supra* at § 12C.03[2].

26

amendment in the near future in fixing the selling price."[41]  The issue, again, is whether the perception of the existence of a market factor (such as the possibility of an imminent rezoning) would change the amount that a fictional buyer would be willing to pay on a given date. The fact that something that was only a *possibility* on day 1 becomes a *reality* on day 2 is not relevant to fair market value *on day 1*.[42]

Our dissenting colleague, as evidenced by his lengthy discussion describing the "imperfect" nature of the eminent domain procedure in calculating just compensation, appropriately explains why condemnation, being a forced

---

[41] *New Jersey v Gorga*, 26 NJ 113, 118; 138 A2d 833 (1958).

[42] We note further that, perhaps fearful of misuse of such evidence, the New Jersey court in *Gorga* stressed that the posttaking zoning amendment at issue had to be "carefully confined to its proper role" and could be received *only* for the purpose of establishing the reasonableness of the factual claim that market participants would have been influenced by the possibility of a future zoning change. *Id*. at 118.  We think that admission of posttaking zoning changes cannot be so easily "confined."  After all, the jurors will have been told that an event that was merely a *possibility* pretaking is now a foregone conclusion.

Moreover, Justice Markman does not explain how to limit his approach to only posttaking *rezoning* situations (and not to the myriad other posttaking events that might be argued to be somehow relevant to fair market value, such as catastrophic property damage).

sale, can only *approximate* a real market real estate transaction. Although we are certainly not unsympathetic to the plight of the innocent landowner who is compelled to sell its property to the public, the governmental power of condemnation *is* one that is specifically condoned by our Constitution and regulated by the UCPA.

Justice Markman's proposal—that we allow in evidence of posttaking events in order to counterbalance the "artificial construct" of the hypothetical willing buyer and seller—is not only inimical to the constitutional and statutory duty to determine fair market value as of the date of the taking; it is also illogical. We submit that Justice Markman incorrectly assumes that the inadmissibility of evidence of posttaking occurrences leads to the invariable "detriment of the property owner" and "the benefit of the government." *Post* at 23. Although the property owners in this *particular* case might be benefited by the introduction of such evidence, the converse would be true were the government permitted to introduce evidence of posttaking events having a *diminishing* effect on property value. It is not difficult to imagine a situation in which a condemning authority might seek to present, in connection with its just-

28

compensation calculation, evidence that the condemned property was rezoned after the taking from commercial to residential, resulting in a *lower* market value.[43]

## B.   HARMLESS ERROR

Defendants argue that any error was harmless because MDOT requested that the jury view the property and because, during the view, the jury saw evidence that a commercial office park was being constructed on defendants' remaining property.  The Court of Appeals majority held that this evidence would likely not have been admitted had defendants not been permitted to present evidence of the posttaking rezoning.  We disagree; MDOT's motion for a jury view was granted *before* the trial court ruled that defendants could put on their valuation experts.  Moreover, we simply have no basis in the existing record to determine what it was that the jury actually saw, and the parties give radically divergent opinions on this point.

_____

[43] Again, Justice Markman appears to be of the belief that the condemning agency in this case is somehow profiting, at defendants' expense, from the rezoning decision.  Yet this case illustrates how misplaced is Justice Markman's supposition.  In this very case it was not plaintiff MDOT, but a third party—the city of Novi—that made the rezoning decision.

We nevertheless conclude that the error was not harmless. Although the jury was properly instructed that it was to determine fair market value as of the date of the taking, it was not instructed that it was to consider only the information extant at the time of the taking. Rather, the jury no doubt believed that the fair market value of the property on the date of the taking was to be calculated as if rezoning were a *fact*, as it was at the time of the trial.

More important, the trial court sorely compounded the error by refusing to allow MDOT to rebut the posttaking evidence by demonstrating that the rezoning was directly attributable to the condemnation itself. In this regard, we agree with our dissenting colleague that the trial court erred in precluding the admission of such evidence. See *post* at 1-2. As we have noted, the UCPA provides that just compensation is not to be determined on the basis of changes in market conditions that are substantially due to the general knowledge of the imminent condemnation of the property; rather, as MCL 213.70 provided at the time of the filing of this condemnation action, "[t]he property shall be valued in all cases as though the acquisition had

not been contemplated."[44]   Thus, to the extent that defendants presented any evidence supporting a change in market value, MDOT should have been permitted to establish that such a change in value was a result of the condemnation of the property.  Because MDOT was deprived of this clear statutory right, the trial court's initial error in admitting the posttaking rezoning evidence was inconsistent with substantial justice[45] and, therefore, may not be considered harmless.  We thus affirm the judgment of the Court of Appeals and remand this case for a new trial.

IV.  Conclusion

The trial court abused its discretion when it denied MDOT's motion to exclude evidence that defendants' property was rezoned commercial after the property was condemned.  Such evidence is irrelevant to the critical just compensation inquiry, which is what a willing buyer would pay for the property on the date of the taking. Because the trial court further compounded this error by

---

[44] See former MCL 213.70 (1980 PA 87), now MCL 213.70(1), amended by 1996 PA 474, effective December 26, 1996.

[45] MCR 2.613(A); see also *Ward v Consolidated Rail Corp,* 472 Mich 77, 84; 693 NW2d 366 (2005).

refusing to allow MDOT to establish, as contemplated by the UCPA, that the zoning change was effectuated by the fact of the condemnation itself, the error in the admission of the evidence was not harmless. We affirm the decision of the Court of Appeals and remand for further proceedings.

Robert P. Young, Jr.
Clifford W. Taylor
Maura D. Corrigan

                    S T A T E   O F   M I C H I G A N

                           SUPREME COURT


MICHIGAN DEPARTMENT OF
TRANSPORTATION,

        Plaintiff-Appellee,

v                                                    No. 124765

HAGGERTY CORRIDOR PARTNERS
LIMITED PARTNERSHIP, PAUL D.
YAGER, trustee, also known as
PAUL D. YEGER, and NEIL J. SOSIN,

        Defendants-Appellants.
_____

KELLY, J. (*concurring*).

        In this case, we consider whether evidence of rezoning
after a taking is admissible to demonstrate that, when the
taking occurred, a reasonable possibility of rezoning
existed.[1] We hold the evidence inadmissible.

        The lead opinion by Justice Young concludes that the
evidence is inadmissible on the ground that it is
irrelevant.  I disagree and believe that this view
erroneously constricts the definition of legal relevance by
placing a temporal constraint on it, whereas legal
relevance is an encompassing characteristic of evidence.

_____

        [1] I use "taking" in this opinion synonymously with
"condemnation" to refer to the government's expropriation
of private property from its owner for public use through
the power of eminent domain.

A majority of the Court agrees that the evidence of rezoning is relevant because it corroborates a fact that is of consequence to the determination of the action: whether there existed a reasonable possibility of rezoning at the time of the taking. MRE 401.

A different majority agrees that the evidence is inadmissible. However, my reasoning differs from the other three justices comprising this majority. I would hold that the inadmissibility of the evidence lies in the fact that its probative value is substantially outweighed by its prejudicial effect. MRE 403.

The admission of the evidence of rezoning unjustly overwhelmed other relevant evidence that showed rezoning was not reasonably likely and that the parcel's reasonable value was as residential property. The jury's consideration of this evidence caused substantial injustice to plaintiff. Accordingly, it was an abuse of the trial court's discretion to admit it, and the error was not harmless.

I agree with the decision of the Court of Appeals to set aside the jury verdict, although for slightly different reasons. I also agree to remand the case for a new trial at which the evidence that the property was rezoned after the taking will not be admitted.

2

UNDERLYING FACTS

This controversy concerns land on which a portion of phase II of the M-5 Haggerty Road Connector in Novi was built.[2] Plaintiff Michigan Department of Transportation filed a complaint under the Michigan Uniform Condemnation Procedures Act (UCPA)[3] to take the land by condemnation. The land is part of a larger tract owned by defendant Haggerty Corridor Partners Limited Partnership. The partnership had aggregated the tract over time by acquiring adjacent parcels in the expectation of future development.

The issue concerns the reasonable market value of the land at the time of the taking. When it was expropriated, the land was zoned residential-agricultural and was undeveloped. At trial, defendants asserted that they had planned to seek to have it rezoned to commercial use. They hoped to develop the land into a technology park, as they had done with a tract in nearby Farmington Hills.

Plaintiff made an offer to buy the land from defendants based on its value for residential or

_____

[2] This portion of the Connector includes a north and southbound roadway between Twelve and Fourteen Mile Roads, west of Haggerty Road in the city of Novi, Oakland County.

[3] MCL 213.51 *et seq.* All statutory references are to the act as it existed at the time the condemnation complaint was filed.

3

agricultural use, consistent with its zoning classification at the time of the taking. Michigan law requires the government to make a good-faith offer to purchase land for its fair market value before filing a condemnation complaint. MCL 213.55. Defendants rejected the offer. They believed that the true market value was much higher because there was a reasonable possibility that the land would be rezoned for commercial use in the near future.

### THE COURT PROCEEDINGS

Plaintiff filed its condemnation complaint on December 7, 1995. It again asserted that the fair market value of the land was its value for residential purposes. Defendants responded that the land was worth more than plaintiff offered due to its potential for commercial use. Plaintiff countered that rezoning was not reasonably possible.

Defendants planned to present significant evidence to show that rezoning for commercial use was reasonably possible at the time of the taking. Key to their argument was evidence that the portion of the tract not condemned was in fact later rezoned commercial. Two and a half years after the taking, Novi rezoned the noncondemned land for office/service/technology use.

4

Plaintiff made a motion to prevent introduction of this evidence.[4]  The trial court heard oral argument and concluded that it was admissible.  The court found it relevant, not too remote in time, and not overly prejudicial.  The evidence was admitted, and the jury awarded damages consistent with defendants' evaluation, which was based on use of the land if zoned commercial.

On appeal, plaintiff argued that admission of the evidence was erroneous.  The Court of Appeals held that the trial court had abused its discretion in admitting it because it "tainted the jury's resolution of the 'reasonable possibility' question of fact."  The Court reversed the judgment of the trial court and remanded the case for a new trial without the erroneously admitted evidence.[5]  Unpublished opinion per curiam of the Court of Appeals, issued July 22, 2003 (Docket Nos. 234099, 240227).

The Court of Appeals decision was not unanimous.  The dissent argued that the majority did not give the trial court's evidentiary ruling the deference it was due and

---

[4] Plaintiff's March 6, 2001, motion in limine to bar testimony of a May 1998 zoning change.

[5] The Court of Appeals, in dicta, also discussed the trial court's consideration of defendants' "cost to cure" the taking.  We did not grant leave to appeal on this issue, and I decline to express a view about it.

that the trial court's decision should be affirmed.  It observed that this Court held in *Dep't of Transportation v VanElslander*[6] that the possibility of subsequent rezoning can be relevant to the market value of land at the time of the taking.  It opined that any error was harmless.

Defendants sought leave to appeal to this Court. Until today, no published decision of this Court or of the Court of Appeals has directly addressed the question presented, and it is susceptible to arising again. Recognizing its jurisprudential significance, we granted leave to appeal

> limited to [the issues] (1) whether a posttaking
> zoning decision can be considered in determining
> value at the time of the taking, and (2) whether
> the Court of Appeals decision in this case is
> consistent with [*VanElslander, supra*]. [470 Mich
> 874 (2004).]

JUST COMPENSATION

We review decisions regarding the admissibility of evidence at trial for an abuse of discretion. *VanElslander, supra* at 129.  It is basic to condemnation law that the government may take private property for public use as long as it pays just compensation for it. Const 1963, art 10, § 2.

---

[6] 460 Mich 127, 130; 594 NW2d 841 (1999).

6

"Just compensation" is a legal term of art. *Silver Creek Drain Dist v Extrusions Division, Inc*, 468 Mich 367, 376; 663 NW2d 436 (2003). It is intended to place the property owner in as good a position financially as if the property had not been taken. This ensures that neither the property owner nor the public is enriched at the other's expense. *State Hwy Comm'r v Eilender,* 362 Mich 697, 699; 108 NW2d 755 (1961).

Just compensation is the fair market value of land at the time of its taking. *Id*. Under the UCPA, what is just compensation is determined as of the date the condemnation complaint is filed and as if the government's acquisition of the land had not been contemplated. MCL 213.70.

The jury assesses the value of condemned land as of the date of condemnation through the eyes of those acquiring or losing it. The market participants cannot foresee the future. In the case under consideration, the participants would not have known that the land would be rezoned. The participants' prediction of whether there was a reasonable possibility of rezoning could be based only on information available at the time of the taking.[7] Current

---

[7] Defendants' real estate appraiser testified that the present value of real estate may be assessed by comparing
Footnotes continued on following page.

property values are based in part on potential changes discounted for their uncertainty.

The law accepts that a reasonable possibility that the zoning classification will be changed "'should be considered in arriving at the proper value.'" *Eilender, supra* at 699, quoting *United States v Meadow Brook Club,* 259 F2d 41, 45 (CA 2, 1958). In *Eilender,* the state presented an appraisal based on the property's residential-use zoning status. The property owner's appraisal was based on commercial use. An application by the owner to rezone the property for commercial use was pending at the time of the taking.

Commercial use of the property in *Eilender* would have been consistent with the zoning of property in some of the surrounding area. But the city commissioners awarded compensation that reflected the state's assessment. In so

---

the value of a given property with that of similar properties.

There was testimony that relevant similarities include the locations, sizes, and available uses of the parcels. Recent sales are more relevant than older sales. However, an appraisal should also consider possible market changes during the time a property can reasonably be expected to remain on the market. For instance, a large, undeveloped parcel like the one at issue here may remain on the market for two to three years before a buyer is found. Comparison data is drawn from appraisals done by other professionals and from public records.

doing, they failed to consider the reasonable possibility that the property would be rezoned. We held that an application for rezoning, submitted before the taking, was relevant to show the reasonable possibility of rezoning and should be considered in determining the property's market value.[8] *Eilender* at 699-700.

### THE RELEVANCE OF THE FACT OF FUTURE REZONING

At trial in this case, defendants submitted evidence suggesting that Novi might rezone defendants' land to a use higher than residential. Because if there was a possibility of rezoning at the time of the taking, it affected the property's fair market value. Hence, any possibility of rezoning it was relevant.[9]

Similarly, I agree with Justices Markman and Weaver that the rezoning was relevant to show that two-and-one-half years before it occurred, a reasonable possibility of

---

[8] In his opinion, Justice Markman fails to discuss the factual context out of which *Eilender* arose. The facts in *Eilender* differed critically from those in this case. There, we remanded the case to allow the jury to hear about an application for rezoning that had been submitted when the taking occurred. In contrast, the jury in this case heard evidence that was not available to the market participants at the time of the taking.

[9] Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" than without the evidence. MRE 401.

9

rezoning may have existed. If something occurs, by definition, the occurrence had to have been possible then and likely at some time beforehand. The fact that the reasonable possibility may not have arisen until after the taking does not render evidence of the rezoning irrelevant. It has some tendency to make more likely the existence of a reasonable possibility before the taking.

However, Justice Young erroneously relies on the fact that a market participant could not have known of the rezoning at the time of the taking. This confuses the temporal relationship between the events with their legal relationship. Although the market participant could not have known that an event would occur in the future, the fact that it did occur shows that it was reasonable to believe beforehand that its occurrence was likely.

Justice Young's example of the roll of a die is misplaced. When one is asked beforehand the result of the roll of a die, six is among the guaranteed results. Each of the six alternative results has an equal chance of occurring with every roll. The fact that a six was rolled is unnecessary to prove that six was possible or that it was reasonable to believe before the roll that six was possible.

10

Rezoning is more like a horse race than the roll of a die.  The probability of a certain horse winning depends on many factors.  They include, among others, the condition of the horse on race day, the condition of the other horses, and the condition of the track.  The odds on a bet placed on that horse, which are an expression of the perceived probability of that horse winning, are based on these factors known before the race.  If the horse wins, the victory corroborates the strength of the prediction that the horse would win.  But there are no guarantees that the horse will ever win, unlike the result of the roll of a die.

Similarly, there are no guaranteed outcomes when one estimates whether property will be rezoned.[10]  Rezoning is one of several possibilities.  The probability of it occurring may never become a reality.  But the fact of rezoning corroborates the assertion that the belief it would be rezoned was reasonable, just as a winning bet corroborates the belief that a horse would win.  As Justice Young notes, rezoning suggests that the prognostication is more accurate than another's that was to the contrary.

---

[10]  Similarly, there are no guarantees that an officer of a corporation will be indicted.  See *ante* at 20 n 34.

*Ante* at 29.  Hence, the evidence of rezoning is legally relevant.

### THE PREJUDICIAL EFFECT OF A FUTURE FACT

Just because evidence is relevant does not mean that it is admissible.  The trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  MRE 403.

We have noted that "[e]vidence is not inadmissible simply because it is prejudicial. Clearly, in every case, each party attempts to introduce evidence that causes prejudice to the other party."  *Waknin v Chamberlain*, 467 Mich 329, 334; 653 NW2d 176 (2002).  "In this context, prejudice means more than simply damage to an opponent's cause.  A party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion."  *People v Vasher,* 449 Mich 494, 501; 537 NW2d 168 (1995).

This rule "'is not designed to permit the court to 'even out' the weight of the evidence . . . or to make a contest where there is little or none.'"  *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), quoting *United States v McRae*, 593 F2d 700, 707 (CA 5, 1979).  The rule prohibits evidence that is unfairly prejudicial.  "Evidence is

12

unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford,* 458 Mich 376, 398; 582 NW2d 785 (1998).

### THE DISTINCTION BETWEEN FACT AND REASONABLE POSSIBILITY

The mischief here is that, once a juror hears evidence that rezoning occurred, the juror will have difficulty concluding anything but that rezoning was reasonably possible when the taking occurred. As noted earlier in this opinion on p 10, it is not necessarily true that the possibility reasonably existed at the time of the taking. Rezoning might have become reasonably possible only upon the happening of one or more events after the taking. The taking itself could be one such event, as plaintiff argued at trial.

Moreover, it does not follow from the fact that something occurs that people could have reasonably believed beforehand that it would occur. Consider these illustrations: In January 1968 one could have predicted that it was reasonably possible that Neil Armstrong would set foot on the moon in July 1969. Similarly, one could say today that it is reasonably possible that man will visit Mars in future years.

Merely because an event occurred does not mean that it was reasonably possible on a given date beforehand. Reasonable predictions of space exploration require one to know much about the status of our space program at the time the prediction is made. An accurate assessment of the reasonable possibility of these two space explorations depends on the information known beforehand. Similarly, a reasonable prediction of future rezoning requires that certain knowledge be available to the market participant at the time of the taking. See p 8 n 7 of this opinion.

The distinction between the fact of an occurrence and whether it was reasonably possible on a given date before it occurred has eluded many. For example, one prominent treatise, cited by the trial court, the dissent in the Court of Appeals, and Justice Markman, characterized the fact of posttaking rezoning as "weighty evidence." 4 Nichols, Eminent Domain (3d ed), § 12C.03[3].

It is not enough that posttaking rezoning is probative of an antecedent possibility of rezoning, as Justice Markman argues. The question is was it reasonably possible at the time of the taking? In this case, the taking was two-and-one-half years before rezoning occurred. The fact that rezoning did occur does not mean that it was

reasonably possible at the time of or before the taking that it would occur.

At first blush, posttaking rezoning is compelling evidence that there was a strong possibility of rezoning at the time of the taking. But the admission of this evidence was unfair because of the significant danger that the jury would not properly limit its consideration of it. Admission of this evidence risks that the jury will accord it weight wildly disproportionate to its probative value and treat rezoning when the taking occurred as a foregone conclusion.[11] This is the "hindsight bias" discussed by Justice Young that leads the jury to give the evidence undue weight and render it unfairly prejudicial. See *ante* at 22 n 36. Rather than prove Justice Young's point, this bias demonstrates why the evidence can be relevant yet unfairly prejudicial.

Evidence of posttaking rezoning also tends to confuse the value of property once rezoned and its value when it was only reasonably possible that it would be rezoned. In a takings case, the amount that the property owner is

---

[11] In his opinion, Justice Markman illustrates this danger, *post* at 21-22. Admission of posttaking rezoning evidence may encourage a witness to testify that it shows a reasonable possibility of rezoning although when the taking occurred, there was no reasonable possibility.

15

entitled to be paid is the latter value. However, the jury may improperly award just compensation based on the value of the land as rezoned as if the property had already been rezoned before the taking.

Justice Markman proceeds on the faith that the jury can limit the evidence to its proper sphere. See *post* at 17-18. However, this approach negates the trial court's role as a gatekeeper under MRE 403. The court must ensure that the influence of the evidence presented to the jury is not wildly disproportionate to its probative value.

In every case, the fact of subsequent rezoning is unavailable to the market participant at the time of the taking. As Justice Markman points out, it allows one party the benefit of the skyscraper or stadium looming overhead whereas the market participant was limited to imagination and someday plans. It is highly prejudicial because it gives one party an unfair advantage over the other by giving the jury information that the hypothetical market participant could not have obtained.[12]

---

[12] Justice Markman muses about the subjective motivations of the parties in a marketplace transaction. However, those motivations are irrelevant here. "Just compensation" is not intended to perfectly replicate a private deal. Nor does it consider that the property owner
Footnotes continued on following page.

Just as the market does not have the benefit of twenty-twenty hindsight, neither do litigants. The jury must assess the value of the property "'on the basis of facts as they then would have appeared to and been evaluated by the mythical buyer and seller.'" *Roach v Newton Redevelopment Auth*, 381 Mass 135, 138; 407 NE2d 1251 (1980), quoting *New Jersey v Gorga*, 26 NJ 113, 118; 138 A2d 833 (1958).[13]

In the interest of having the same availability of information as the market participants at the time of the

---

was an unwilling seller. In fact, the analysis is meant to ensure that this factor is not considered.

Like all "objective" legal determinations, "just compensation" is a legal construct. I disagree that it should be ascertained by considering factors that were unavailable to market participants at the time of the taking.

[13] See also *Reeder v Iowa State Hwy Comm*, 166 NW2d 839, 842 (Iowa, 1969) (inference that the adoption of the ordinance more than eight months after condemnation proves that the higher use was the best use "*at time of taking* . . . is manifestly lacking in substance") (emphasis in original).

These cases and others cited by Justice Markman for the proposition that evidence of posttaking rezoning is admissible, dealt only with whether the evidence was admissible because it was relevant. They admitted the evidence without addressing its prejudicial effect. See also *Bembinster v Wisconsin*, 57 Wis 2d 277, 284-285; 203 NW2d 897 (1973); *Texas Electric Service Co v Graves*, 488 SW2d 135, 137 (Tex App, 1972). Thus, I am not as persuaded as is Justice Markman by their less thorough analysis.

17

taking, the jury should not know of posttaking rezoning. It causes too great a danger of confusion of the issues and unfair prejudice to the taking party, outweighing its probative value.[14]

THIS EVIDENCE OF POSTTAKING REZONING WAS UNFAIRLY PREJUDICIAL

The highly prejudicial tendency of posttaking evidence to confuse and mislead substantially outweighed its minimal probative value in this case. Plaintiff estimated that the land was worth $2,758,200. Defendants set their damages at $18,586,000. The jury substantially agreed with defendants and awarded them $14,877,000.

The award suggests a high likelihood that the jury was overwhelmed with the evidence of the posttaking rezoning. The jury appears to have ignored significant evidence that rezoning was not foreseeable. Novi's chief planning consultant testified that, in 1993, the planning commission recommended that the land not be rezoned commercial. He revealed that the city had no plan to rezone the land because there was a demand for large-lot, million-dollar

---

[14] Justice Markman implies that our decision today improperly favors the government. *Post* at 23 n 18. Although the government may benefit today, I strive to apply the rules of evidence objectively and in accordance with their goal of deciding cases fairly and on their merits. I do not consider the identities of the parties.

homes.  He told the jury that the intention of the city council and the planning commission was to maintain the property for residential purposes.  As of the date of the taking, he would not have recommended a change in zoning.  Also, defendants had no pending petition for a zoning change, unlike the defendant in *Eilender*.

The evidence of posttaking rezoning was not harmless, as defendants argue.  Plaintiff presented sufficient evidence to the jury that it could have concluded that there was little reasonable possibility of rezoning at the time of the taking.  But defendants' damages award, which was substantially in agreement with their claim, demonstrates that the jury likely gave the posttaking evidence far more weight than it merited.  Therefore, its admission here violated MRE 403 and was an abuse of discretion.[15]

I agree with Justice Young that the trial court exacerbated the error.  The court admitted the evidence of rezoning but precluded plaintiff from presenting evidence that the rezoning occurred as a result of the taking.

---

[15] My analysis would not prevent a trial court from considering posttaking rezoning when determining the admissibility of other evidence that was available at the time of the taking.  MRE 104(a).

19

Plaintiff should have been allowed to counter the effect of the evidence once it was admitted.  See *ante* at 30.

Michigan takings law has long recognized that a condemnation award may be disturbed on appeal where erroneously admitted evidence caused substantial injustice in the result.  *Michigan Air Line R v Barnes,* 44 Mich 222, 227; 6 NW 651 (1880); MCR 2.613(A).  I find that because of the erroneous admission of evidence, a substantial injustice occurred here.

THE EFFECT OF THE VIEW OF THE LAND BY THE JURY

It bears noting that, contrary to the Court of Appeals dissent, plaintiff did not open the door to evidence of posttaking rezoning or render its admission harmless by requesting a jury view.  Plaintiff filed its motion in limine opposing the evidence of subsequent rezoning on March 6, 2001.  At a March 15 hearing, although the court did not rule, its language suggested that ultimately it would deny the motion.

By March 28, the trial court had not ruled on the motion.  Plaintiff feared that it would receive an adverse ruling.  Therefore, it moved for a jury view.  Plaintiff argues that it did so to provide some evidence that the property, most of which remained undeveloped at the time, was more akin to residential property than commercial

20

property.  Plaintiff asserted that it would have withdrawn the motion if, before the jury view, the court had announced its decision to exclude defendants' posttaking rezoning evidence.  Plaintiff did not preclude appellate review by properly anticipating and attempting to mitigate the trial court's error.

Moreover, the jury view did not render harmless the erroneous admission of the evidence of posttaking rezoning. There is no record evidence of what the jury saw when it viewed the property.  It may have seen some commercial construction and inferred that part of the parcel had been rezoned.  But I agree with plaintiff that the jury view was not the equivalent of uncontroverted evidence that the entire parcel had been rezoned.

### *DEP'T OF TRANSPORTATION V VANELSLANDER*

My view is not inconsistent with our decision in *VanElslander, supra*.  In that case, the Department of Transportation took a portion of the defendants' land.  As a consequence, a building on the remainder of the land was in violation of local set-back requirements.  The department attempted to introduce evidence that it was reasonably possible for the defendants to mitigate the effect of the taking on the uncondemned building by obtaining a zoning variance.  A variance could have cured

21

the set-back violation and avoided loss of the building. On appeal to this Court, the department argued that the defendants' appeal was moot because the building had been demolished.

We held that the evidence showing the possibility of obtaining a variance was admissible. Also, the fact that the building had been demolished did not render the appeal moot. *VanElslander, supra* at 132.

In determining just compensation, the jury in *VanElslander* was entitled to hear of the likelihood that, at the time of the taking, a variance might have been sought and granted. Similarly, the jury in this case was entitled to hear evidence showing the likelihood of rezoning. But just as subsequent demolition was not an appropriate consideration when determining damages in *VanElslander*, neither was subsequent rezoning an appropriate consideration here.

### CONCLUSION

The government must pay just compensation when it takes land for public use. Const 1963, art 10, § 2. Just compensation is the fair market value of the land. *Eilender, supra* at 699. It is determined at the time of the taking. MCL 213.70.

The prejudicial effect of evidence of subsequent rezoning on the determination of fair market value substantially outweighs its relevance. MRE 403. For that reason, it is not admissible to show the reasonable possibility of rezoning at the time of the taking. In this case, the erroneous admission of this evidence was an abuse of discretion. It was not harmless because it caused substantial injustice to plaintiff.

I agree with the conclusion of the Court of Appeals. Plaintiff is entitled to a new trial without the admission of evidence of the posttaking zoning change.[16] I agree with the decision to remand the case to the trial court and not retain jurisdiction.

Marilyn Kelly

---

[16] Consequently, I need not address the argument that the trial court should have admitted evidence that the taking itself caused the rezoning.

S T A T E   O F   M I C H I G A N

SUPREME COURT

MICHIGAN DEPARTMENT OF
TRANSPORTATION,

    Plaintiff-Appellee,

v                                     No. 124765

HAGGERTY CORRIDOR PARTNERS
LIMITED PARTNERSHIP, PAUL D.
YAGER, trustee, also know as
PAUL D. YEGER, and NEIL J. SOSIN,

    Defendants-Appellants.

_____

**WEAVER, J.** *(dissenting).*

I dissent from the majority's conclusion that evidence of a posttaking rezoning is inadmissible in this case. I agree with Justice Markman's conclusion that the evidence of a posttaking rezoning is relevant evidence that is admissible in this case to enable the jury to assess whether a "reasonable possibility" of rezoning existed on the date of the taking and whether the possibility would have affected the price a willing buyer would have offered for the property at the time of the taking. Therefore, I would conclude that the trial court did not abuse its discretion in admitting the evidence.

I also agree with Justice Markman's conclusion that the trial court did abuse its discretion in excluding plaintiff's evidence that the posttaking rezoning was caused by the taking, where this evidence was offered to counter defendants' argument that there was a reasonable possibility of a zoning change.

Therefore, I would vacate the Court of Appeals decision and remand this case for a new trial.

Just compensation for private property that is condemned for public use is intended to "put the party injured in as good position as he would have been if the injury had not occurred." *State Hwy Comm'r v Eilender,* 362 Mich 697, 699; 108 NW2d 755 (1961). Determining just compensation "is not a matter of formula or artificial rule but of sound judgment and discretion based upon the relevant facts in the particular case." *Id.* We have held that a reasonable possibility that a zoning classification will be changed is relevant and should be considered when determining just compensation to the extent that the "'possibility' would have affected the price which a willing buyer would have offered for the property just prior to the taking." *Id.* at 699 (citation omitted); see also *Dep't of Transportation v VanElslander,* 460 Mich 127, 130; 594 NW2d 841 (1999). A posttaking change in zoning is

relevant[1] because it may assist the jury in assessing the possibility of a zoning change at the time of the taking—i.e., how likely a zoning change was at the time of the taking—and whether that possibility would have affected the price a willing buyer would have offered for the property at the time of the taking.[2]  Therefore, I would conclude that the trial court did not abuse its discretion in admitting evidence of a posttaking change in zoning.

Additionally, just as the defendants in this case should be permitted to introduce evidence of a posttaking change in zoning to demonstrate the possibility of a zoning change at the time of the taking and how the possibility would have affected the price, plaintiff in this case should be permitted to offer evidence to counter defendants' evidence.  Such evidence includes evidence that

---

[1] As defined in MRE 401, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Further, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court."  MRE 402.

[2] As stated by the Supreme Court of New Jersey, "In short if the parties to a voluntary transaction would as of the date of taking give recognition to the probability of a zoning amendment in agreeing upon the value, the law will recognize the truth."  *New Jersey v Gorga*, 26 NJ 113, 117; 138 A2d 833 (1958).

the rezoning in this case was a result of the taking. Therefore, I would conclude that the trial court abused its discretion in excluding evidence that the rezoning was a result of the taking.

Consistent with this opinion, I would remand the case to the trial court for a new trial.

Elizabeth A. Weaver
Michael F. Cavanagh

4

# STATE OF MICHIGAN

## SUPREME COURT

MICHIGAN DEPARTMENT OF
TRANSPORTATION,

    Plaintiff-Appellee,

v                                              No. 124765

HAGGERTY CORRIDOR PARTNERS
LIMITED PARTNERSHIP, PAUL D.
YAGER, trustee, also known as
PAUL D. YEGER, and NEIL J. SOSIN,

    Defendants-Appellants.

_____

MARKMAN, J. (*dissenting*).

The majority concludes that evidence of a posttaking rezoning is inadmissible to demonstrate that a "reasonable possibility" of rezoning existed on the date of the taking.[1] I respectfully disagree. Because I believe that evidence of a posttaking rezoning is admissible to demonstrate that a "reasonable possibility" of rezoning existed on the date of the taking, I do not believe that the trial court abused its discretion in admitting such evidence. However, I do

---

[1] Throughout this opinion, I use the term "majority" when referring to both Justice Young's lead opinion and Justice Kelly's concurring opinion, and I use the term "plurality" when referring only to Justice Young's lead opinion.

believe that the trial court abused its discretion in prohibiting plaintiff from introducing evidence that the posttaking rezoning was caused by the taking. Therefore, I would vacate the decision of the Court of Appeals and remand this case for a new trial, in which defendants would be allowed to introduce evidence of the posttaking rezoning and plaintiff would be allowed to introduce evidence that such posttaking rezoning was caused by the taking.

I. FACTS AND PROCEDURAL HISTORY

Defendant partnership, a partnership that develops real estate, owned 335 acres of vacant property in Novi.[2] In 1995, the Michigan Department of Transportation (MDOT) began proceedings to condemn fifty-one acres of defendants' property for use in the construction of the M-5 Haggerty Road Connector in Novi. On the date of the taking, the property was zoned for residential use, but in 1998 the property was rezoned for commercial use. At trial, at which the jury was charged with determining the "just compensation" due defendants, the trial court allowed

---

[2] According to defendants, they purchased this property to build a high technology office park, anticipating that the property would be rezoned from residential to commercial. After the taking, the property was rezoned from residential to commercial and defendants did build an office park on their remaining 284 acres.

defendants to present evidence of the posttaking rezoning.[3] However, the trial court refused to allow MDOT to introduce rebuttal evidence that the property was rezoned only as a result of the taking. Defendants requested approximately $18.5 million in compensation and MDOT agreed to pay approximately $2.7 million. The jury returned a verdict of approximately $14.8 million. In a split decision, the Court of Appeals affirmed in part, reversed in part, and remanded for a new trial. Unpublished opinion per curiam, issued July 22, 2003 (Docket Nos. 234099 and 240227). The majority held that the trial court abused its discretion in admitting evidence of the posttaking rezoning, and, thus, remanded for a new trial. The dissenting judge concluded that the trial court did not abuse its discretion either in admitting evidence of the posttaking rezoning or in excluding evidence that the posttaking rezoning was caused by the taking, and, thus, he would have affirmed the verdict.

## II. ANALYSIS

Art 10, § 2 of Michigan's 1963 Constitution provides that "[p]rivate property shall not be taken for public use

---

[3] At MDOT's request, the jury saw the property in its posttaking state.

3

without just compensation therefor being first made or secured in a manner prescribed by law." "'"The purpose of just compensation is to put property owners in as good a position as they would have been had their property not been taken from them."'" *Dep't of Transportation v VanElslander*, 460 Mich 127, 129; 594 NW2d 841 (1999) (citations omitted). Therefore, "the proper amount of compensation for property takes into account all factors relevant to market value." *Silver Creek Drain Dist v Extrusions Div, Inc*, 468 Mich 367, 379; 663 NW2d 436 (2003). In order to determine "just compensation," we must determine the market "value of the condemned land at the time of the taking . . . ." *State Hwy Comm'r v Eilender*, 362 Mich 697, 699; 108 NW2d 755 (1961). The fair market value of condemned property "shall be determined with respect to the condition of the property and the state of the market on the date of valuation." MCL 213.70(3). "'[A]ny evidence that would tend to affect the market value of the property as of the date of condemnation is relevant.'" *VanElslander, supra* at 130 (citation omitted).

A. RELEVANCE OF EVIDENCE OF POSTTAKING REZONING

It is well established and uncontested that one of the factors relevant to market value is the "'reasonable possibility that the zoning classification will be

4

changed.'" *Eilender, supra* at 699 (citation omitted). As this Court held in *Eilender, supra* at 699, "'if there is a reasonable possibility that the zoning classification will be changed, this possibility should be considered in arriving at the proper value.'" (Citation omitted.)[4] In other words, if, at the time of the taking, there existed a "reasonable possibility" that the property would be rezoned to allow "more lucrative uses," this "reasonable possibility" should be considered.[5] *Id.* This factor "'must be considered in terms of the extent to which the "possibility" would have affected the price which a willing buyer would have offered for the property just prior to the taking.'" *Id.* (citation omitted). Property that is zoned to allow "more lucrative uses" is worth more money than property that is not so zoned. Therefore, property that has a "reasonable possibility" of being rezoned to allow

___

[4] Justice Kelly states that I am mischaracterizing this Court's holding in *Eilender*. I cite *Eilender* only for a proposition with which everybody apparently agrees—a "reasonable possibility" of rezoning should be considered when determining "just compensation." I do not suggest that this Court in *Eilender* already answered the question at issue here.

[5] The opposite, of course, is true as well. That is, if, at the time of the taking, there existed a "reasonable possibility" that the property would be rezoned to exclude "more lucrative uses," this "reasonable possibility" should also be considered. *Id.*

"more lucrative uses" is worth more money than property that does not have a "reasonable possibility" of being rezoned to allow "more lucrative uses."[6] A person whose property has been taken by the government is entitled to the full market value of the taken property, taking into consideration the totality of factors that a willing buyer would consider, including the "reasonable possibility" of rezoning.

The majority does not disagree that the "reasonable possibility" of rezoning is a factor that must be considered when determining "just compensation." However, the majority concludes that the fact itself that the property was rezoned after the taking cannot be considered in determining whether there was, at the time of the taking, a "reasonable possibility" of rezoning. I disagree. Instead, I believe that such evidence may afford compelling evidence that a "reasonable possibility" of rezoning existed at the time of the taking.

In this case, one of the primary issues for the jury to resolve was whether, at the time of the taking, there

_____

[6] As the plurality recognizes, "at the time defendants acquired their Novi property, beginning in 1988, the property was more valuable in their eyes because of the looming possibility of a future zoning change." *Ante* at 19-20.

6

was a "reasonable possibility" that the subject property would be rezoned from residential to commercial. MDOT argues that the trial court abused its discretion when it allowed defendants to introduce evidence that, although the property was zoned residential at the time of the taking, 2 1/2 years later the property was rezoned commercial. The Court of Appeals majority agreed with MDOT, concluding that "evidence of the actual zoning change was irrelevant to the value of the property on the date of taking and should not have been disclosed to the jury." Slip op at 3.

The Court of Appeals dissent, on the other hand, concluded that the trial court did not abuse its discretion in admitting evidence of the posttaking rezoning. I agree with this dissent. MRE 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court."[7] MRE 401 defines relevant evidence as

---

[7] MDOT does not argue that the admission of the posttaking rezoning violated the Constitution of the United States or the Constitution of the state of Michigan. It only argues that the evidence is not relevant and that, even if it is relevant, it should be excluded pursuant to MRE 403, as discussed later in this opinion.

that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

As already discussed, whether a "reasonable possibility" of rezoning existed at the time of the taking is of consequence to the determination of "just compensation."[8] That the property was, in fact, rezoned makes it "more probable" that a "reasonable possibility" of rezoning existed at the time of the taking. As the Court of Appeals dissent explained, "evidence of the actual rezoning had the tendency to make the existence of the

_____

[8] I do not know why the plurality suggests that I "misidentify[] the 'fact that is of consequence,'" *ante* at 17, because I agree with the plurality that "the 'fact that is of consequence' is the reasonable possibility of a zoning modification, *as that possibility might have been perceived by a market participant on condemnation day*." *Ante* at 18 n 32 (emphasis in the original). Where the plurality and I differ is with regard to whether evidence of a posttaking rezoning makes it "more probable" that a "reasonable possibility" of rezoning existed at the time of the taking. I agree with the plurality that the fact that the property was subsequently rezoned does not necessarily mean that a "reasonable possibility" of a rezoning existed at the time of the taking. However, the fact that the property was subsequently rezoned makes it "more probable" that a "reasonable possibility" of a rezoning existed at the time of the taking than would the fact that the property was not subsequently rezoned.

possibility of rezoning more probable than it would be without the evidence." Slip op at 2. This is true because a jury confronted with the reality of a subsequent rezoning would be acting in an altogether logical fashion by comparing this reality to an alternative reality in which no subsequent rezoning had occurred, and concluding that the former reality gives rise to a greater inference than the latter that the impetus for rezoning preceded the taking. Whether this inference is strong or weak would depend on the totality of the circumstances.

The majority, however, would, in every case, deny the property owner the ability to introduce evidence of an actual rezoning, regardless of the strength of the inference raised by the rezoning either by itself or in conjunction with other evidence. Because I believe that evidence of actual rezoning gives rise to the wholly logical inference that the genesis of that rezoning *may* have preceded the taking, I would not bar the introduction of such evidence.[9] Indeed, the leading treatise on eminent

---

[9] The plurality is impressive in the breadth of the analogies that it brings to bear in its analysis, ranging from probability to the stock market to psychology. If, as I understand it to be the plurality's point, the future is unpredictable, I am persuaded. If, on the other hand, it is the plurality's point that when the future becomes the present it is of no relevance in assessing what the
Footnotes continued on following page.

domain observes that evidence of a posttaking rezoning "has been held to be weighty evidence of the existence (at the time of the taking) of the fact that there was a reasonable probability of an imminent change." 4 Nichols, Eminent Domain (3d ed), § 12C.03[3]. As the New Jersey Supreme Court has explained, such evidence "support[s] the reasonableness of the factual claim that on the date of taking the parties to a voluntary sale would have recognized and been influenced by the probability of an amendment in the near future in fixing the selling price." *New Jersey v Gorga*, 26 NJ 113, 118; 138 A2d 833 (1958).[10]

---

prospects yesterday were of that future, I respectfully disagree.

[10] Other states have held that evidence of a posttaking rezoning is admissible to help the jury determine the "just compensation" due for the taking. *Roach v Newton Redevelopment Auth*, 381 Mass 135, 137; 407 NE2d 1251 (1980) (holding that "[a]ctual amendment of the zoning law, subsequent to the taking, may be 'weighty evidence' of such a prospect"); *Bembinster v Wisconsin*, 57 Wis 2d 277, 284-285; 203 NW2d 897 (1973) (holding that "[t]he type of evidence which has been admitted as material as tending to prove a reasonable probability of change includes . . . the actual amendment of the ordinance subsequent to the taking"); *Texas Electric Service Co v Graves*, 488 SW2d 135, 137 (Tex App, 1972) (holding that "if subsequent to the taking and before the trial the ordinance was actually amended to permit the previously forbidden use then that of itself was weighty evidence of the existence at the time of the taking of the fact that there was a reasonable probability of an imminent change"); *Reeder v Iowa State Hwy Comm*, 166 NW2d 839, 841 (Iowa, 1969) (holding that a rezoning ordinance enacted more than eight months after the
Footnotes continued on following page.

10

As the majority explains, the jury is charged in cases of this sort with determining what a "mythical," "hypothetical," "theoretical," "fictional," "willing" buyer, would have paid a "mythical," "hypothetical," "theoretical," "fictional," "willing" seller for the property in a "voluntary," transaction at the time of the taking. *Ante* at 15, 17, 18, 22, 23, 24, 25 n 38, and 27, 28, 31; *ante* at 15. However, in truth, the condemnation process does not involve a typical willing buyer,[11] a

---

taking, although not dispositive, was admissible). See also 9 ALR3d 291, § 11[a], p 320 ("[c]hange of an existing zoning ordinance, subsequently to the time of condemnation, has been held admissible in a trial for the award of compensation as bearing on the degree of probability and the imminence of the change at the time of the taking"); 4 Rathkopf's The Law of Zoning and Planning, § 75:8 (4th ed) ("[a] change in the zoning classification of a condemned parcel or similarly situated adjacent properties subsequent to a taking is considered weighty evidence of a reasonable probability of an imminent change at the time of taking"). Contrary to the plurality's suggestion, *ante* at 26 n 40, I have chosen to "blindly . . . follow the lead of these few jurisdictions," only if the entirety of the analysis contained in this dissent is disregarded. I cite the above cases only to contrast the support in other states for the position expressed in this dissent with the utter absence of similar support for the majority's position.

[11] "As to the condemnor/government in the hypothetical 'fair market value' scenario, the government stands in the shoes of a 'willing [private] buyer.'" 13 Powell, Real Property, § 79F.04[2][a][ii], p 39.

willing seller, or a voluntary transaction.[12]  Instead, it involves a transaction in which the government takes property without the permission or consent of the property owner, in what is essentially a "forced sale."  The property owner is not a willing seller, and the government is not a typical willing buyer.  The condemnation process bears little in common with a voluntary sale of property in the market between a willing seller and a willing buyer.

It is a source of its confusion that the majority fails to give significance to these differences.  Yet, they are determinative of the very issue before this Court.  The majority provides that the jury is to "suppose" that the property owner is indistinguishable from a willing seller, that the government is indistinguishable from a typical willing buyer, and that both have entered into a market transaction.  Next, the jury is asked to "imagine" the value that a "reasonable" buyer and seller would have placed on the property in the market.  Finally, although the jury can be apprised by the governmental "buyer" that at the time of "sale," the property was zoned residential

---

[12] "Not only does the 'fair market value' test posit a hypothetical buyer and a hypothetical seller, it also posits a hypothetical market . . . ."  13 Powell, Real Property, § 79F.04[2][a][iii][A], p 39.

12

and there was no "reasonable possibility" of it being rezoned, the jury cannot be apprised by the private "seller" that such rezoning, in fact, has already occurred. The upshot of this procedure is that the jury must "imagine" a typical willing buyer, a willing seller, and a voluntary transaction—none of which, of course, exist in reality—while at the same time the jury must not consider a reality that *does* exist, namely, that the government has taken property that has been rezoned.

Moreover, not only is the jury to "imagine" a market transaction where in reality there is none, but in calculating the "fair market value" of the property being "sold" the jury must imagine a particular moment in time at which the taking, or "forced sale," occurred, placing itself in the shoes not of any real parties involved in the taking, but of a nonexistent "reasonable" buyer and seller. This is in further contrast to a genuine market transaction in which the buyer and the seller stand in their own shoes, and there is no need for a jury, or any other third party, to imagine anything concerning the value of property.

What is the significance of the fact that the condemnation process is not truly equivalent to a market transaction? Its significance lies in its demonstration that the majority operates on a faulty premise when it

13

insists that the jury, in making its "fair market value" determination, can have access only to such information as would have been possessed by a "real" buyer and seller at the time of the "real" transaction.  In the instant case, this means, according to the majority, that the jury must be deprived of the information that the property was rezoned after it was taken.  Apart from the fact that all of the majority's "realities" are merely fictive, there is simply no basis for the proposition that parties to a genuine transaction and parties to a constructive transaction can, or should, be placed on an equal footing concerning the range of access to information.  This is a false equivalency because the underlying transactions are not equivalent.

In the market transaction, the buyer and the seller will typically possess considerable information that is distinctive or unique to themselves—sentimental considerations concerning property, subjective assessments of value, and estimations of worth that are a function of their personal experiences, their varied speculations of the future, and their diverse financial circumstances and ambitions.  Such "subjective" factors are inaccessible to the jury, which can only make a "fair market value"

determination on the basis of "objective" factors.[13]   Just as the participants in the "subjective" transaction may then possess information that is unavailable to the participants in the "objective" transaction, the corollary is also true.   For the participants in the "subjective" transaction are involved in the task of calculating "personal value," while the participants in the "objective" transaction are involved in the very different task of calculating "fair market value."   In calculating the former amount as accurately as possible—"personal value"—it is necessary merely that the buyer and the seller be permitted to take into consideration as much information as is of

---

[13] "Market value" or "fair market value" is defined as the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner who was willing but not obliged to sell it.

The hypothetical nature of this "value" should be obvious.   Moreover, the condemnee is assumed to be not only a "willing seller" but also a person who will act as a purely economic creature, when in fact neither assumption may be true.   One inescapable result of imposing the purely economic "willing seller" persona onto the condemnee is that the formula permits no compensation for subjective or sentimental attachment that the condemnee may have to the property.   Only objective transferable value is considered.   Subjective nontransferable value, such as . . . sentimental value generally [is] not included in the just compensation calculation.   [13 Powell, Real Property, § 79F.04[2][a][i], pp 37-38.]

importance to each. In calculating the latter amount as accurately as possible—"fair market value"—it is necessary in contrast that as much relevant information as available concerning value be taken into consideration.

For the reasons set forth earlier, I believe that evidence of posttaking rezoning is relevant to "fair market value." Such relevance is not diminished by the fact that this information might not have been available to participants in a "subjective" transaction. Although the "objective" transaction of the condemnation process can never truly replicate the "subjective" transaction of the marketplace, it can nonetheless be made as perfect as possible on its own terms. This can be achieved only by making available as much relevant information as possible to the fact-finder.

## C. PROBATIVE VALUE VERSUS DANGER OF UNFAIR PREJUDICE

MDOT argues that, even if evidence of the posttaking rezoning is relevant evidence, it should be excluded pursuant to MRE 403. MRE 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However,

16

"[e]vidence is not inadmissible simply because it is prejudicial." *Waknin v Chamberlain*, 467 Mich 329, 334; 653 NW2d 176 (2002). "'"Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403 . . . .""'" *Id*. at 334 (citations omitted). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. at 334 n 3, quoting *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). "The fact that, subsequent to the taking, the zoning ordinance was actually amended to permit the previously proscribed use has been held to be *weighty evidence* of the existence (at the time of the taking) of the fact that there was a reasonable probability of an imminent change." 4 Nichols, Eminent Domain (3d ed), § 12C.03[3] (emphasis added). Evidence of a posttaking rezoning "is not *merely marginally probative evidence*, and thus there is no danger that marginally probative evidence will be given undue weight by the jury." *Waknin, supra* at 335 (emphasis added). Further, the trial court repeatedly instructed the jury that it was to value the property as of

the date of the taking,[14] and we must presume that the jurors understood and followed these instructions.[15] *People v Dennis*, 464 Mich 567, 581; 628 NW2d 502 (2001).

---

[14] The trial court instructed the jury:

> Your award must be based upon the market value of the property *as of the date of taking.* . . .

> * * *

> The Court has instructed you on the subject of highest and best use. One of the things that must be considered in deciding what the highest and best use of the property was *at the time of the taking* is the zoning clarification -- zoning classification of the property *at that time*. However, if there was a reasonable possibility, absent the threat of this condemnation case, that the zoning classification would have been changed, you should consider this possibility in arriving at the value of the property *on the date of taking.* . . .

> In this case, the market value of the property, both before and after the taking, must be determined *as of December 7th, 1995*, and *not at an earlier or later date*. [Emphasis added.]

[15] Justice Kelly contends that admission of evidence of a posttaking rezoning would be too confusing for a jury to handle, and the plurality concludes that such evidence "cannot be . . . easily 'confined.'" *Ante* at 16, 18, 19; a*nte* at 27 n 42. I believe that a jury is quite capable of making a distinction between the fair market value of the property at the time of the taking and the fair market value of the property at some later time. I also believe that a jury is quite capable of understanding that just because the property today is zoned commercial does not
Footnotes continued on following page.

18

## D. Practical Value of Evidence of Posttaking Rezoning

At trial, MDOT argued that there was no "reasonable possibility" that the property would be rezoned. Not permitting defendants to respond to this argument with the fact that the property has, in fact, been rezoned undermines the integrity of the judicial process by requiring a jury to ignore reality. That is, the majority would require the jury to ignore the skyscraper that looms over a property, or the crowds milling about the new sports stadium. Such a determined obliviousness to reality brings no honor to a justice system when there are customary and traditional means—a trial court that precisely instructs on the law and a jury that faithfully abides by the

---

necessarily mean that there was a "reasonable possibility" of the property being rezoned commercial 2 1/2 years earlier. If jurors can be trusted sufficiently to determine what constitutes "just compensation," or the fair market value of property, they can also be trusted to pay heed to the trial court when it plainly instructs them on proper and improper uses of evidence.

Justice Kelly has determined that "the jury was overwhelmed with the evidence of the posttaking rezoning," that it "ignored significant evidence that rezoning was not foreseeable," and that it "likely gave the posttaking evidence far more weight than it merited." *Ante* at 18, 19. There is no evidence to sustain this determination, other than the fact that the jury's calculation of fair market value was closer to that proposed by defendants than by plaintiff. Moreover, "just compensation" is a factual question that is normally left to the jury to decide, not the judges of this or any other court.

instructions—by which to ensure that the skyscraper or the sports stadium is evaluated only for proper purposes. The majority is correct that evidence of a posttaking rezoning is not dispositive concerning whether there existed at the time of the taking a "reasonable possibility" of a rezoning. However, it is incorrect that such rezoning can never be of any relevance in this regard. Rather, just as with all other aspects of the "just compensation" determination, the relevance of a particular posttaking rezoning must be assessed on a case-by-case basis.

The premise of our justice system is that providing more, rather than less, information will generally assist the jury in discovering the truth. Relevant evidence sustains the truth-seeking process. "In the American judicial system, a jury is called upon to assume the important role of fact-finder and the massive responsibility that the role entails: searching for the truth. 'The purpose of trial is to find the truth and exact justice through the transmission of information to the jury.'" Comment, *Speaking out: Is Texas inhibiting the search for truth by prohibiting juror questioning of witnesses in criminal cases?*, 32 Tex Tech L R 1013, 1014 (2001) (citation omitted). The costs to our justice system are almost always much greater, in my judgment, when the

jury is deprived of relevant evidence than when the consideration of such evidence is enabled and a risk incurred that it will be considered for improper purposes. For we can reasonably protect against the latter risk through careful instructions and thoughtful deliberations. By contrast, lost evidence will forever taint a decision that could have been enhanced by the consideration of such evidence. While recognizing that posttaking rezoning evidence can be abused, such evidence also carries the potential to ensure a truer and better-informed calculation of fair market value. To deprive the jury in this case of the ability to consider the rezoning is to undermine its ability to determine the truth in this matter, and thereby to produce the most accurate possible determination of "just compensation" to which defendants are constitutionally entitled.[16]

Finally, knowing that a jury will be apprised of all relevant information also may serve felicitously to

---

[16] Contrary to Justice Kelly's criticism, I am not attempting to "negate[] the trial court's role as a gatekeeper." *Ante* at 16. I agree that it is the trial court's role to exclude evidence with regard to which "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. In view of her criticism, it is ironic that it is Justice Kelly who would reverse the decision of the trial court admitting evidence, finding this to constitute an abuse of discretion.

21

encourage those who testify and who argue before the jury to do so in a more accurate and precise fashion. For example, a government witness may be more hesitant to tell the jury that there was no "reasonable possibility" of a rezoning if the witness knows that the jury will eventually be informed that the property has, in fact, been rezoned. In other words, a government witness may well be less cocksure in his or her assertion that there was no "reasonable possibility" of a rezoning if there is a real-world check upon the witness's testimony. Under the majority's approach, the government will remain free to tell the jury that absolutely no possibility of a rezoning existed, and the property owner will be unable to rebut this assertion by being allowed to inform the jury that the property has, in fact, been rezoned.[17] To allow such a

---

[17] The plurality asserts that the admission of evidence of a posttaking rezoning would "lead to gamesmanship" because it "would give condemning agencies every incentive to postpone zoning plans in order to reduce the price of just compensation." *Ante* at 21 n 35. The plurality, however, fails to give any attention to the fact that the *exclusion* of such evidence will give the government the ability to paint a false or distorted picture of the worth of property in the face of a contrary reality. That is, while the admission of such evidence may lead to gamesmanship *outside* the courtroom, the *exclusion* of the evidence may lead to gamesmanship *inside* the courtroom. Besides the fact that the inclination of a government to engage in gamesmanship outside the courtroom may say much
Footnotes continued on following page.

distorted picture of the reality surrounding the exercise of a constitutional power, to the benefit of the government and to the detriment of the property owner, is to undermine the integrity of the constitutional process.[18]

---

about its inclination within the courtroom, this Court must necessitously be most concerned about conduct within the courtroom. Maintaining the integrity of the legal process is one of our principal charges. Presumably, the political processes are available to address the conduct of governments that seek to thwart evidence in order to deny their own citizens fair market value for their "taken" properties.

Moreover, gamesmanship outside the courtroom is far less likely to arise than gamesmanship within the courtroom. Many factors play a role in a government's decision whether or not to rezone property; how much the government will have to pay for property that has already been condemned is only one of these factors. On the other hand, during a trial in which the exclusive issue is how much does the government have to pay for the condemned property, the government's dominant interest will always be to paint a picture of property of as little market value as possible.

[18] The plurality contends that my concern is misplaced because it was the city of Novi's decision to rezone the property, not MDOT's. *Ante* at 29 n 43. However, regardless of which governmental entity decided to rezone the property, it cannot be disputed that the majority's decision to exclude evidence of the posttaking rezoning is beneficial to the government and detrimental to the private property owner.

For these reasons, I conclude that the trial court did not abuse its discretion in admitting evidence of the posttaking rezoning.[19]

### E. EVIDENCE THAT POSTTAKING REZONING WAS CAUSED BY TAKING

A posttaking rezoning is admissible only as evidence that a "reasonable possibility" of a rezoning existed at

---

[19] Although I conclude that evidence of a posttaking rezoning is admissible, I would caution that in admitting such evidence the trial court must carefully instruct the jury, as it did here, that the jury is to determine the market value at the *time of the taking* and that evidence of a posttaking rezoning is to be used only for the purpose of determining whether there existed at the time of the taking a "reasonable possibility" of rezoning. That is, the trial court must ensure that the jury does not "assign[] inflated significance" to the posttaking rezoning. *Ante* at 22 n 36. As the New Jersey Supreme Court has explained:

> [A]n amendment of the ordinance which came into being after the date of taking should not be excluded solely because of the time sequence. But such evidence should be carefully confined to its proper role. It may serve only to support the reasonableness of the factual claim that on the date of taking the parties to a voluntary sale would have recognized and been influenced by the probability of an amendment in the near future in fixing the selling price. The fact would still remain that on the date of taking the property was otherwise zoned, and the value as of that date must still be reached on the basis of facts as they then would have appeared to and been evaluated by the mythical buyer and seller. [*Gorga, supra* at 118.]

24

the time of the taking.[20]  A rezoning that was caused by the taking obviously does not constitute evidence that a "reasonable possibility" of a rezoning existed at the time of the taking.  In other words, a posttaking rezoning that was caused by the taking is simply not relevant evidence in support of fair market value at the time of the taking. Therefore, "[t]he effect on market value of the condemnation proceeding itself may not be considered as an element of value."  *Silver Creek, supra* at 379, n 13, citing MCL 213.70(1),[21] and *In re Urban Renewal, Elmwood*

---

[20]  In determining the weight to be given to a posttaking rezoning in considering whether there existed a "reasonable possibility" of a rezoning at the time of the taking, the jury should consider the totality of the circumstances, including the time that has elapsed between the taking and the rezoning, the complexity of the project and the extent to which planning for such project must have predated the taking, changed circumstances within the jurisdiction creating or affecting the need for such rezoning, the nature of changes in the composition of the pertinent zoning body and within the relevant political jurisdiction and the extent to which such changes were foreseeable, the credibility of public authorities on the circumstances surrounding a rezoning, the extent to which the taking itself caused the rezoning, and any reasonable inferences that can be drawn from the fact of an actual rezoning.

[21] MCL 213.70(1) provides, in pertinent part:

> A change in the fair market value before the date of the filing of the complaint which . . . was substantially due to the general knowledge of

Footnotes continued on following page.

*Park Project,* 376 Mich 311, 318; 136 NW2d 896 (1965). "[A]n actual change in zoning cannot be taken into account if it 'results from the fact that the project which is the basis for the taking was impending.'" *Roach v Newton Redevelopment Auth,* 381 Mass 135, 137; 407 NE2d 1251 (1980), quoting 4 Nichols, Eminent Domain (rev 3d ed), § 12.322[1], n 7.1. See also *State v Kruger*, 77 Wash 2d 105, 108; 459 P2d 648 (1969); *People ex rel Dep't of Pub Works v Arthofer*, 245 Cal App 2d 454, 465; 54 Cal Rptr 878 (1966); *Williams v City & Co of Denver*, 147 Colo 195, 202; 363 P2d 171 (1961). The trial court itself recognized that, if the posttaking rezoning was caused by the taking, the jury should not consider the posttaking rezoning when considering whether a "reasonable possibility" of a rezoning existed at the time of the taking, as it instructed the jury: "if there was a reasonable possibility, *absent the threat of this condemnation case,* that the zoning classification would have been changed, you should consider this possibility in arriving at the value of the property on the date of taking." (Emphasis added.)

---

the imminence of the acquiring by the agency . . . shall be disregarded in determining fair market value. Except as provided in section 23, the property shall be valued in all cases as though the acquisition had not been contemplated.

However, the trial court, for reasons that are unclear, refused to allow MDOT to present evidence that the posttaking rezoning may have been a result of the taking.[22]

The Court of Appeals dissent relied on MCL 213.73 to conclude that the trial court did not abuse its discretion in excluding evidence that the posttaking rezoning was caused by the taking.[23]  MCL 213.73 provides, in pertinent part:

[22] The plurality concludes that the trial court erred in admitting evidence of the posttaking rezoning and that this error was not harmless because: (1) "the jury no doubt believed that the fair market value of the property on the date of the taking was to be calculated as if rezoning were a *fact*," *ante* at 30 (emphasis in the original), a curious conclusion given that the trial court specifically instructed the jury that it was to determine what the fair market value of the property was "as of the date of taking" and the jury was made well aware that the rezoning did not take place until 2 1/2 years after the taking; and (2) "the trial court sorely compounded the error by refusing to allow MDOT to rebut the posttaking evidence by demonstrating that the rezoning was directly attributable to the condemnation itself." *Ante* at 30.  As explained above, I agree with the majority that the trial court abused its discretion in refusing to admit MDOT's evidence. However, I disagree with the majority that the appropriate resolution is to remand for a new trial in which both defendants' and plaintiff's evidence is excluded.  Instead, I would remand for a new trial in which both plaintiff's and defendants' evidence is admitted.

[23] The Court of Appeals majority did not address this issue, concluding that "[i]n light of our ruling [that the trial court abused its discretion in admitting evidence of the posttaking rezoning], we need not address whether the trial court abused its discretion in prohibiting plaintiff

Footnotes continued on following page.

(1) Enhancement in value of the remainder of a parcel . . . shall be considered in determining compensation for the taking.

(2) When enhancement in value is to be considered in determining compensation, the agency shall set forth in the complaint the fact that enhancement benefits are claimed and describe the construction proposed to be made which will create the enhancement.

The dissent concluded that because MDOT "did not plead in its complaint any benefit to defendants' remaining property as a result of its construction project," the trial court did not abuse its discretion "when it prevented [MDOT] from presenting evidence that the rezoning occurred as a result of its construction project . . . ." Slip op at 4. I respectfully disagree. MCL 213.73 is applicable where the condemning agency attempts to reduce the amount of "just compensation" on the basis that the condemnation actually increased the value of the remaining property that was not condemned. MDOT attempted to introduce evidence here that the rezoning was the *result* of the condemnation, not to show that defendants' remaining property was enhanced by the condemnation, but to show that when the taking occurred there was not a "reasonable possibility" of a rezoning. In other words, MDOT did not contend that it should pay less

_____

from introducing evidence establishing that the rezoning was caused by the condemnation." Slip op at 3 n 3.

for the fifty-one acres taken because the remaining 284 acres will be worth more than before the taking. MDOT does not contend that "enhancement in value is to be considered in determining compensation." MCL 213.73. To the contrary, MDOT is arguing that enhancement in value, i.e., the subsequent rezoning, is not to be considered in determining compensation. Therefore, in my judgment, MCL 213.73 simply does not apply here.

### III. CONCLUSION

Because I believe that evidence of a posttaking rezoning is admissible to demonstrate that a "reasonable possibility" of rezoning existed on the date of the taking, I do not believe that the trial court abused its discretion in admitting such evidence. However, I do believe that the trial court abused its discretion in prohibiting plaintiff from introducing evidence that the posttaking rezoning was *caused* by the taking. Therefore, I would vacate the decision of the Court of Appeals and remand this case for a new trial, in which defendants would be allowed to introduce evidence of the posttaking rezoning and plaintiff would be allowed to introduce evidence that this posttaking rezoning was the result of the taking.

Stephen J. Markman